UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SAMUEL EDMOND,                    ) NO. EDCV 13-1108-AS
                                  )
                                  )
          Plaintiff,              ) **MEMORANDUM OPINION AND ORDER**
                                  )
     v.                           )
                                  )
CAROLYN W. COLVIN, Acting         )
Commissioner of Social            )
Security,                         )
                                  )
                                  )
          Defendant.              )
_____  )

**PROCEEDINGS**

     On July 1, 2013, Plaintiff filed a Complaint seeking review of
the Commissioner's denial of Plaintiff's application for a period
of disability, and disability insurance benefits ("DIB"), and
supplemental security income ("SSI").   (Docket Entry No. 3).   On
August 27, 2013, the matter was transferred and referred to the
current Magistrate Judge.   (Docket Entry No. 14).   On December 30,
2013, Defendant filed an Answer and the Administrative Record
("A.R.").   (Docket Entry Nos. 19, 20).   The parties have consented

1

to proceed before a United States Magistrate Judge. (Docket Entry Nos. 15, 16). On March 3, 2014, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Docket Entry No. 21). The Court has taken this matter under submission without oral argument. See C.D. Local R. 7-15; "Case Management Order," filed August 7, 2013 (Docket Entry No. 6).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

Plaintiff, a former medical technician, phlebotomist, and medical receptionist (A.R. 16), asserts disability beginning May 13, 209, based on the alleged physical impairments of degenerative disk disease of the lumbar spine; colon cancer, status post resection; hypertension; gastroesophageal reflux disease; and history of coronary artery disease, status post single coronary artery bypass and recent history of a borderline electrocardiogram. (Id. 9; Joint Stip. 2). On February 29, 2012, the Administrative Law Judge, Paula J. Goodrich ("ALJ"), examined the record and heard testimony from Plaintiff and a vocational expert ("VE"), Troy L. Scott. (A.R. 24-63).

On April 6, 2012, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. (Id. 9-17). The ALJ found that Plaintiff has the severe impairment of degenerative disc disease of the lumbar spine. (Id. 11). She also determined that Plaintiff has the nonsevere conditions of colon cancer, status post resection; hypertension; gastroesophageal reflux disease; and history of coronary artery disease, status post single coronary

artery bypass graft, and recent history of a borderline electrocardiogram. (Id. 11-12). She determined that Plaintiff's alleged depression is not medically determinable. (Id. 12).

The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of medium work. (Id. 13).

Relying on the testimony of the VE, the ALJ determined that Plaintiff was able to perform his past relevant work, as actually and generally performed, as a medical technician (Dictionary of Occupational Titles ("DOT") No. 078.381-014); phlebotomist (DOT No. 079.364-022); and medical receptionist (DOT No. 237.367-038). (Id. 16).

Accordingly, the ALJ found that Plaintiff was not disabled at any time from the alleged disability onset date of May 13, 2009, through April 6, 2012, the date of the decision. (Id. 17).

PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ erred (1) in rejecting the opinions of his treating physician; and (2) in discounting Plaintiff's credibility. (Joint Stip. 3).

STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial

evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." Reddick,

157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material[1] legal error.

**A.    Applicable Law**

"The Social Security Act defines disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C. § 423 (d)(1)(A)). The ALJ follows a five-step, sequential analysis to determine whether a claimant has established disability. 20 C.F.R. § 404.1520.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful employment activity. Id. § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as "work that . . . [i]nvolves doing significant and productive physical or mental duties[] and . . . [i]s done (or intended) for

---

[1]    The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision will not be reversed for errors that are harmless).

pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling him to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all his impairments. 20 C.F.R. § 416.920(e).

Once the RFC is determined, the ALJ proceeds to step four to assess whether the claimant is able to do any work that he or she has done in the past, defined as work performed in the last fifteen years prior to the disability onset date.  If the ALJ finds that the claimant is not able to do the type of work that he or she has done in the past or does not have any past relevant work, the ALJ proceeds to step five to determine whether - taking into account the claimant's age, education, work experience and RFC - there is any other work that the claimant can do and if so, whether there are a significant number of such jobs in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(iii)-(v).  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Tackett, 180 F.3d at 1098.

**B.** **The ALJ Properly Discounted the Opinions of Plaintiff's Treating Physician**

**1.** **Legal Standard**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining or reviewing physicians).  See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the opinions of treating physicians are given greater weight than those of other physicians, because

7

treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. <u>Orn v. Astrue</u>, 495 F.3d 625, 631 (9th Cir. 2007); <u>Smolen</u>, 80 F.3d at 1285. Where, as here, a treating physician's opinion is contradicted by another doctor, the ALJ must provide specific and legitimate reasons supported by substantial evidence to properly reject it. <u>Lester</u>, 81 F.3d at 830-31 (citing <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1043 (9th Cir. 1995)); <u>see also Orn</u>, 495 F.3d at 632-33; Soc. Sec. Ruling 96-2p.

## 2.   <u>The ALJ Properly Discounted the Opinions of Dr. Lee</u>

On April 13, 2011, plaintiff's treating physician, Jonathan Lee, MD, completed a "Primary Treating Physician's Progress Report," for Plaintiff's Worker's Compensation Claim. (A.R. 492-95). In that report, Dr. Lee opined that Plaintiff was temporarily restricted to "modified duty," limiting him to sedentary work. (<u>Id.</u> 494). One month later, on May 11, 2013, Dr. Lee opined in another progress report that Plaintiff was "permanent and stationary with restrictions of no prolonged standing, walking, sitting, stooping and bending and no repetitive lifting." (<u>Id.</u> 490).

With respect to Dr. Lee's opinions, the ALJ stated the following:

Dr. Lee treated the claimant over a lengthy period, was reporting within the bounds of his professional certifications, and had access to the claimant's medical

8

records; however, he did not cite to the records in support of his conclusions, there is no indication that he bears even a passing familiarity with the disability process, his opinion altered in the space of [a] single month with no changes in his objective findings to explain such a shift, his opinion reported degrees of functional limitation that finds no foundation in his objective findings and his opinion was offered to a different government program, with different objectives. Accordingly, little weight was accorded either of his opinions.

(Id. 15-16).

Plaintiff argues that the ALJ improperly rejected the April 13, 2011, and May 11, 2011, opinions of Dr. Lee. (Joint Stip. 3-9). He contends that the ALJ failed to state whether she accepted or rejected Dr. Lee's opinions, and did not provide specific and legitimate reasons supported by substantial evidence for rejecting his opinions. (Id. 4). Specifically, he argues that the ALJ failed to articulate with any degree of specificity any evidence to support her conclusory findings regarding Dr. Lee's opinions; failed to credit Dr. Lee's longitudinal relationship with Plaintiff; improperly relied on a finding that Dr. Lee is not familiar with the disability process; and erred in concluding that Dr. Lee's opinions had no foundation in his objective findings. (Id. 6-7). The Court disagrees.

9

**a.   Dr. Lee's Changed Opinion**

As discussed, one reason the ALJ discounted Dr. Lee's opinions was that those opinions changed in the space of a month from "[m]odified duty, sedentary work only," to "permanent and stationary with restrictions of no prolonged standing, walking, sitting, stooping and bending and no repetitive lifting," which would preclude even sedentary work.   (Compare A.R. 494 with id. 409).   The ALJ also found that Dr. Lee's opinions were unsupported by Dr. Lee's objective findings.   (Id. 15-16).

A review of Dr. Lee's April and May 2011 reports shows that despite Dr. Lee's change in opinion in May 2011, he stated in that later report that Plaintiff's "[c]urrent complaints are unchanged from his previous visit," and that since Plaintiff's last visit "there have not been any new injuries." (Id. 488.)   Moreover, the Court notes that Dr. Lee had also assessed "Modified duty, sedentary work only,"[2] in all of his prior reports, dated October 20, 2010, November 17, 2010, December 15, 2010, January 19, 2011, February 16, 2011, and March 16, 2011. (Id. 501-29).

Dr. Lee provided no explanation for this sudden change in opinion after nine months of treating Plaintiff and finding him capable of modified sedentary work throughout that time.   This inconsistency is a basis for rejecting Dr. Lee's opinion.   See

_____

[2]    An August 24, 2010 "Initial Orthopedic/Neurologic Consultation and Request for Authorization of Medical Treatment for Utilization Review Purposes" completed by Gail Hopkins, II, MD, also noted that Plaintiff should continue "on the same modified duties at sedentary work . . . ." (A.R. 529).

*Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by relevant medical documentation"); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly discounted treating doctor's opinions for being "so extreme as to be implausible," and "not supported by any findings," where there was "no indication in the record what the basis for these restrictions might be").

**b.   Lack of Objective Findings**

An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); 20 C.F.R. § 404.1527(d)(2) ("If we find that a treating source's opinion . . . is well-supported . . . and not inconsistent with the other substantial evidence in your case record, we will give it controlling weight"). Additionally, an ALJ may properly discount a treating physician's limitations as "not supported by any findings" where there is "no indication in the record what the basis for these restrictions might be." *Rollins*, 261 F.3d at 856; *see also* 20 C.F.R. § 404.1527(c)(2); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction between a treating physician's opinion and his treatment notes constitutes a specific and legitimate reason for rejecting the treating physician's opinion); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (contradiction between treating physician's assessment and clinical notes justifies rejection of assessment); *see also*

Johnson, 60 F.3d at 1432 (ALJ properly rejected physician's determination where it was "conclusory and unsubstantiated by relevant medical documentation").

Here, Dr. Lee's objective findings fail to support his May 2011 opinions.  In the examination on that date, Dr. Lee observed that Plaintiff was a "well-developed, well-nourished male who ambulates into the examination room with a normal heel to toe gait, independently, without assistive device." (A.R. 489).  He also noted the following:  areas of tenderness on palpation of plaintiff's lumbar area; Plaintiff's lumbar range of motion was 70% of normal in flexion and extension; straight leg raising was negative; motor functioning was 5/5 bilaterally; Plaintiff's reflexes were normal; and there was no atrophy, gross deformity, or edema in Plaintiff's upper and lower extremities.  (Id.).  These findings were identical to Dr. Lee's April 2011 findings; indeed, they were identical to all of Dr. Lee's previous findings in his reports dated October 20, 2010, November 17, 2010, December 15, 2010, January 19, 2011, February 16, 2011, and March 16, 2011, and in the August 24, 2010, initial consultation report completed by Dr. Hopkins, who also took x-rays in her office on that date.[3] (Id. 501-23, 524-29).  Dr. Hopkins also stated that Plaintiff was not a surgical candidate, and noted that although epidural steroid injections had been recommended to Plaintiff after his 2002 MRI, they were never performed because Plaintiff stated "that he opted

---

[3]  See also supra note 2.  Dr. Hopkins noted that the x-rays of Plaintiff's lumbar spine showed "degenerative disc disease at L5-S1 of moderate degree," and x-rays of the thoracic spine showed "evidence of very mild degenerative changes consistent with age." (A.R. 529).

not to undergo the injections." (<u>Id.</u> 522, 525, 529).

Additionally, the only diagnostic studies referred to by Dr. Lee in his records were a "repeat MRI of the lumbar spine" performed on July 11, 2008, "which revealed mild degenerative disc disease and facet osteoarthritis at L4-5 and L5-S1 with no evidence of abnormal contrast enhancement or spinal stenosis"[4] (<u>id.</u> 521), and a March 24, 2011, MRI of the thoracic spine, which showed a "[n]ormal thoracic spine" (<u>id.</u> 490, 494, 496).  Dr. Lee did not take any of his own x-rays, nor did he mention or appear to rely in any way on Dr. Hopkins' x-rays.  (<u>Id.</u>; <u>see also</u> <u>supra</u> note 3).  Dr. Lee treated Plaintiff conservatively with medication (<u>id.</u> 490, 499, 503, 507, 511, 515, 522), and it was not until his May 11, 2011, report that he recommended Plaintiff receive "ten sessions of physical therapy for the next five years." (<u>id.</u> 490).

### c.  <u>Worker's Compensation Context</u>

The ALJ also noted that Dr. Lee's opinion, prepared in the worker's compensation context, contains no indication that "he bears even a passing familiarity with the disability process." (A.R. 16).  Although Plaintiff contends this is irrelevant, the regulations provide that "the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has . . . are relevant factors that we will consider in deciding the weight to give to a medical opinion."

---

[4]   These findings were consistent with Plaintiff's prior MRI on October 3, 2002.  (<u>See, e.g.</u>, A.R. 525).

20 C.F.R. § 404.1527(c)(6).

### 3. __Conclusion__

Based on the foregoing, the ALJ provided specific and legitimate reasons for discounting the opinions of Dr. Lee. Therefore, there was no error.

## C. __The ALJ Did Not Arbitrarily Discredit Plaintiff's Testimony__

Plaintiff contends that the ALJ erred in discounting Plaintiff's credibility. (Joint Stip. at 12-15).

### 1. __Legal Standard__

Where, as here, the ALJ finds that a claimant suffers from a medically determinable impairment that could reasonably be expected to produce his or her alleged symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the individual's symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the [ALJ] to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effect." Soc. Sec. Ruling 96-7p.

An ALJ's assessment of a claimant's credibility is entitled to "great weight." Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).

14

The ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings. <u>Lester</u>, 81 F.3d at 834; <u>see also Berry v. Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010) (reaffirming same); <u>but see Smolen</u>, 80 F.3d at 1283-84 (indicating that ALJ must provide "specific, clear and convincing reasons to reject a claimant's testimony where there is no evidence of malingering); <u>see Rashad v. Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990).[5] Generalized, conclusory findings do not suffice. <u>See Moisa v. Barnhart</u>, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); <u>Smolen</u>, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); <u>see also</u> Soc. Sec. Ruling 96-7p.

---

[5] In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard. <u>See, e.g.</u>, <u>Chaudhry v. Astrue</u>, 688 F.3d 661, 670, 672 n.10 (9th Cir. 2012); <u>Molina v. Astrue</u>, 674 F.3d 1104, 1112 (9th Cir. 2012); <u>Taylor v. Comm'r of Soc. Sec. Admin.</u>, 659 F.3d 1228, 1234 (9th Cir. 2011); <u>Valentine</u>, 574 F.3d at 693; <u>Ballard v. Apfel</u>, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases). As set forth <u>infra</u>, the ALJ's findings in this case are sufficient under either the "clear and convincing" standard, or the requirement that the ALJ make "specific findings" supported by the record in making the credibility evaluation, so the distinction between the two standards (if any) is academic.

An ALJ may consider a range of factors in assessing credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284.

**2.   The ALJ's Credibility Finding**

The ALJ stated that Plaintiff "alleges chronic, severe back pain with muscle spasms and numbness in his legs." (A.R. 13). She stated the following with respect to Plaintiff's credibility:

> After careful consideration of the evidence, the
> undersigned finds that the claimant's medically
> determinable impairments could reasonably be expected to
> cause the alleged symptoms; however, the claimant's
> statements concerning the intensity, persistence and
> limiting effects of these symptoms are not credible to
> the extent they are inconsistent with the above residual
> functional capacity assessment.

(Id.)

The Court's review of the ALJ's decision shows that she discounted Plaintiff's testimony for the following specific

16

reasons: (1) diagnostic testing, and the record when viewed as a whole, is not supportive of Plaintiff's contention that his impairment is "preclusive of all types of work"; (2) Plaintiff's prescription medication are effective, and without side effects; (3) Plaintiff's treatment has been conservative and routine in nature; (4) Plaintiff declined to follow up on therapies somewhat more invasive than physical therapy, including epidural steroid injections, and a discogram; (5) Plaintiff described daily activities which are not limited to the extent that would be expected given his complaints of disabling symptoms and limitations; and (6) Plaintiff made inconsistent statements regarding his medication side effects. (Id. 14-15).

### a.   Objective Medical Evidence

Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor . . ." Rollins, 261 F.3d at 857. Lack of supporting objective medical evidence is a key consideration for the ALJ in evaluating credibility. See 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4) (in determining disability, an ALJ must evaluate a claimant's statements about the intensity, persistence and limiting effects of her symptoms "in relation to the objective medical evidence and other evidence").

Here, the ALJ reviewed the July 11, 2008, diagnostic imaging of Plaintiff's lumbar spine, which reported only mild degenerative

disc disease and osteoarthritic changes "from the L4 through L1 vertebral bodies." (A.R. 14 (citing id. 525)). The ALJ also noted that the imaging showed no evidence of canal or foraminal stenosis, or nerve root involvement. (Id.).

Furthermore, Plaintiff's physical examinations "consistently, albeit not universally, reported either minimal or normal findings." (Id.). For instance, various examination reports reflected normal posture when sitting and standing, rising without difficulty from a sitting position or the examining table, a normal gait, no tenderness of the lumbar spine (although one report noted "areas of tenderness to palpation"), mildly reduced or full range of lumbar motion, negative straight leg raising, normal muscle strength, normal reflexes, normal sensation, and lack of an assistive device for ambulation. (Id. (citing id. 367-69, 472-73, 502)). These are valid reasons for discounting Plaintiff's subjective complaints. Morgan v. Comm'r of Soc. Sec., 169 F.3d 595, 600 (9th Cir. 1999) (conflict between subjective complaints and the objective medical evidence in the record is a sufficient reason that undermines a claimant's credibility; Osenbrock v. Apfel, 240 F.3d 1157-1165-66 (9th Cir. 2001) (affirming ALJ's decision that relied in part on finding that neurological and orthopedic evaluations revealed "very little evidence" of any significant disabling abnormality of the claimant's upper or lower extremities, or spine).

Accordingly, substantial evidence supports the ALJ's credibility analysis with respect to the objective medical evidence

and this was a clear and convincing reason for discounting Plaintiff's credibility.

More importantly, as discussed below, this was not the sole legally sufficient reason for discounting Plaintiff's credibility.

### b. __Effective Medication Without Side Effects__

The ALJ also discredited Plaintiff's testimony because the treatment notes reflected that Plaintiff follows "a regimen of prescription medications," which, according to Dr. Lee are effective, and without side effects. (A.R. 14).

The ALJ also reported that Plaintiff made inconsistent statements regarding the side effects of his medications, noting that in his disability report he reported side effects, but then reported to his treating source that there are no side effects from the same medications. (Id. 15 (citing id. 247 (claiming his medications may cause ringing in his ears), 429 (Plaintiff reported no side effects from the medication he "has been on regularly")).

The record supports these findings. Plaintiff's health records do not indicate any complaints of side effects, and there is no indication that any medications were discontinued or modified as a result of such complaints. Indeed, Dr. Lee routinely continued prescribing Plaintiff the same medications. (Id. 247, 427–29, 480, 482, 484, 486, 488, 490, 492, 494, 497, 499, 501, 503, 505, 507, 509, 511, 513, 515)). On March 16, 2011, Dr. Lee

noted that he was renewing Plaintiff's medication "as it allows [Plaintiff] to function." (Id. 499; see also id. 482 (Plaintiff told Dr. Lee he needs medication for his pain "which allows him to function")). Dr. Lee also repeatedly noted that Plaintiff's symptoms are "alleviated with massage, heat and medications," and/or therapy (Id. 488, 492, 497, 501, 505, 509, 513). At the hearing, although Plaintiff noted that he sometimes feels dizzy, or needs to take a nap during the day, he was not sure if it was because of his medications or for other reasons. (Id. 41-42, 44). He did not mention ringing in his ears.

In assessing a claimant's credibility about his symptoms, an ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c). An ALJ may also rely on "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling symptoms. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991). In this case, Plaintiff's statements in his disability report regarding possible medication side effects were inconsistent with the medical record and his testimony at the hearing.

Accordingly, these were valid reasons supported by substantial evidence of record for discounting Plaintiff's credibility.

### c.   Conservative and Routine Treatment

The ALJ's credibility assessment also relies on the fact that Plaintiff's treatment for his "'allegedly disabling impairment" has

been "essentially routine and/or conservative in nature." (A.R. 14). She noted that Plaintiff had received physical therapy, and was "discharged" from that practice on June 10, 2010, "having met all of his goals." (Id. (citing id. 405)).

A review of the record supports the ALJ's conclusion. For instance, Plaintiff's Worker's Compensation reports indicated that he had been treated conservatively for "the past four years," with medications and physical therapy. (Id. 518, 525). On July 27, 2010, Plaintiff was "instructed to finish his [physical] therapy and medications as well as his home exercise program." (Id.).

The ALJ was entitled to discount Plaintiff's credibility based on his positive response to conservative treatment. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain"); Johnson, 60 F.3d at 1432 (ALJ may properly rely on the fact that only conservative treatment has been prescribed).

The ALJ also relied on the fact that Plaintiff had refused "somewhat more invasive" therapies than physical therapy, including epidural steroid injections, and a discogram. (A.R. 14 (citing id. 522, 525)). An ALJ may consider many factors in weighing a claimant's credibility, including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment. Tommasetti, 533 F.3d at 1039.

Accordingly, these were clear and convincing reasons to discount Plaintiff's credibility.

### d.   <u>Activities of Daily Living</u>

The ALJ also discounted Plaintiff's credibility to the extent his complaints were inconsistent with his reported activities, including the ability to attend to his own hygiene and grooming, drive a car, attend to light yard work, attend to light mechanical maintenance, prepare his own meals, shop in stores, and watch television for pleasure. (A.R. 15 (citing <u>id.</u> 248)). The ALJ concluded:

> In short, the claimant has described daily activities,
> which are not limited to the extent one would expect,
> given the complaints of disabling symptoms and
> limitations. It is noted that the scope of these
> activities is not consistent with the degree of
> functional limitation allegedly the claimant, and
> although none of these activities, considered alone,
> would warrant or direct a finding of not disabled, when
> considered in combination, they strongly suggest that the
> claimant would be capable of engaging in the work
> activity contemplated by the residual functional
> capacity.

(<u>Id.</u>). The ALJ also noted that although Plaintiff alleges he performs "few house chores," he lives alone and does not report

22

that he gets any sort of help in maintaining his residence. (<u>Id.</u>)
Daily activities that are inconsistent with alleged symptoms are a
relevant credibility determination. <u>Rollins</u>, 261 F.3d at 857.

Accordingly, the Court finds that this was a legally
sufficient reason for the ALJ's adverse credibility finding.

### 3. <u>Conclusion</u>

The legally valid reasons given by the ALJ for discounting
Plaintiff's credibility sufficiently allow the Court to conclude
that the ALJ credibility finding was based on permissible grounds.
The Court therefore defers to the ALJ's credibility determination.
<u>See</u> <u>Lasich v. Astrue</u>, 252 Fed. App'x 823, 825 (9th Cir. 2007)
(court will defer to ALJ's credibility determination when the
proper process is used and proper reasons for the decision are
provided); <u>accord</u> <u>Flaten v. Sec'y of Health and Human Serv.</u>, 44
F.3d 1453, 1464 (9th Cir. 1995). Where the ALJ has made specific
findings justifying a decision to disbelieve Plaintiff's symptom
allegations and those findings are supported by substantial
evidence in the record, "we may not engage in second guessing."
<u>Thomas</u>, 278 F.3d at 958-59.

### ORDER

For all of the foregoing reasons, the decision of the
Administrative Law Judge is affirmed.

23

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   December 3, 2014.

                                        /s/
                                        ALKA SAGAR
                                        UNITED STATES MAGISTRATE JUDGE