UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SAMUEL EDMOND, | ) | NO. EDCV 13-1108-AS |
| | ) | |
| Plaintiff, | ) | **AMENDED** |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**PROCEEDINGS**

On July 1, 2013, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's application for a period of disability, and disability insurance benefits ("DIB"), and supplemental security income ("SSI"). (Docket Entry No. 3). On August 27, 2013, the matter was transferred and referred to the current Magistrate Judge. (Docket Entry No. 14). On December 30, 2013, Defendant filed an Answer and the Administrative Record ("A.R."). (Docket Entry Nos. 19, 20). The parties have consented

1   to proceed before a United States Magistrate Judge. (Docket Entry
2   Nos. 15, 16). On March 3, 2014, the parties filed a Joint
3   Stipulation ("Joint Stip.") setting forth their respective
4   positions regarding Plaintiff's claim. (Docket Entry No. 21). The
5   Court has taken this matter under submission without oral argument.
6   See C.D. Local R. 7-15; "Case Management Order," filed August 7,
7   2013 (Docket Entry No. 6).

8
9                **BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

10
11      Plaintiff, a former medical technician, phlebotomist, and
12  medical receptionist (A.R. 16), asserts disability beginning May
13  13, 2009, based on the alleged physical impairments of degenerative
14  disk disease of the lumbar spine; colon cancer, status post
15  resection; hypertension; gastroesophageal reflux disease; and
16  history of coronary artery disease, status post single coronary
17  artery bypass and recent history of a borderline electrocardiogram.
18  (Id. 9; Joint Stip. 2). On February 29, 2012, the Administrative
19  Law Judge, Paula J. Goodrich ("ALJ"), examined the record and heard
20  testimony from Plaintiff and a vocational expert ("VE"), Troy L.
21  Scott. (A.R. 24-63).

22      On April 6, 2012, the ALJ issued a decision denying
23  Plaintiff's applications for DIB and SSI. (Id. 9-17). The ALJ
24  found that Plaintiff has the severe impairment of degenerative disc
25  disease of the lumbar spine. (Id. 11). She also determined that
26  Plaintiff has the nonsevere conditions of colon cancer, status post
27  resection; hypertension; gastroesophageal reflux disease; and
28  history of coronary artery disease, status post single coronary

                                    2

1  artery  bypass  graft,  and  recent  history  of  a  borderline
2  electrocardiogram.  (Id. 11-12).  She determined that Plaintiff's
3  alleged depression is not medically determinable.  (Id. 12).

4
5      The ALJ determined that Plaintiff has the residual functional
6  capacity ("RFC") to perform the full range of medium work.  (Id.
7  13).

8
9      Relying on the testimony of the VE, the ALJ determined that
10  Plaintiff was able to perform his past relevant work, as actually
11  and generally performed, as a medical technician (Dictionary of
12  Occupational Titles ("DOT") No. 078.381-014); phlebotomist (DOT No.
13  079.364-022); and medical receptionist (DOT No. 237.367-038).  (Id.
14  16).

15      Accordingly, the ALJ found that Plaintiff was not disabled at
16  any time from the alleged disability onset date of May 13, 2009,
17  through April 6, 2012, the date of the decision.  (Id. 17).

18
19                    **PLAINTIFF'S CONTENTIONS**
20

21      Plaintiff contends that the ALJ erred (1) in rejecting the
22  opinions of his treating physician; and (2) in discounting
23  Plaintiff's credibility.  (Joint Stip. 3).

24
25                    **STANDARD OF REVIEW**
26

27      This Court reviews the Commissioner's decision to determine
28  if:  (1) the Commissioner's findings are supported by substantial

                              3

evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C. § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F.3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)). To determine whether substantial evidence supports a finding, "a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of supporting evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation and internal quotation marks omitted); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (same). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." Reddick,

1   157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

3   **DISCUSSION**

5   After consideration of the record as a whole, the Court finds
6   that the Commissioner's findings are supported by substantial
7   evidence and are free from material[1] legal error.

9   **A.   Applicable Law**

11  "The Social Security Act defines disability as the 'inability
12  to engage in any substantial gainful activity by reason of any
13  medically determinable physical or mental impairment which can be
14  expected to result in death or which has lasted or can be expected
15  to last for a continuous period of not less than 12 months.'" Webb
16  v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting 42 U.S.C.
17  § 423 (d)(1)(A)).  The ALJ follows a five-step, sequential analysis
18  to determine whether a claimant has established disability.  20
    C.F.R. § 404.1520.

20  At step one, the ALJ determines whether the claimant is
21  engaged in substantial gainful employment activity.  Id. §
22  404.1520(a)(4)(i).  "Substantial gainful activity" is defined as
23  "work that . . . [i]nvolves doing significant and productive
24  physical or mental duties[] and . . . [i]s done (or intended) for

---

26  [1]     The harmless error rule applies to the review of
    administrative decisions regarding disability.  See McLeod v.
27  Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart,
    400 F.3d 676, 679 (9th Cir. 2005) (stating that an ALJ's decision
28  will not be reversed for errors that are harmless).

pay or profit." Id. §§ 404.1510, 404.1572. If the ALJ determines that the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires the ALJ to determine whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities. See id. § 404.1520(a)(4)(ii); see also Webb, 433 F.3d at 686. The "ability to do basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b); Webb, 433 F.3d at 686. An impairment is not severe if it is merely "a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." Webb, 433 F.3d at 686.

If the ALJ concludes that a claimant lacks a medically severe impairment, the ALJ must find the claimant not disabled. Id.; 20 C.F.R. § 1520(a)(ii); Ukolov v. Barnhart, 420 F.3d 1002, 1003 (9th Cir. 2005) (ALJ need not consider subsequent steps if there is a finding of "disabled" or "not disabled" at any step).

However, if the ALJ finds that a claimant's impairment is severe, then step three requires the ALJ to evaluate whether the claimant's impairment satisfies certain statutory requirements entitling him to a disability finding. Webb, 433 F.3d at 686. If the impairment does not satisfy the statutory requirements entitling the claimant to a disability finding, the ALJ must determine the claimant's RFC, that is, the ability to do physical and mental work activities on a sustained basis despite limitations from all his impairments. 20 C.F.R. § 416.920(e).

6

1    Once the RFC is determined, the ALJ proceeds to step four to
2  assess whether the claimant is able to do any work that he or she
3  has done in the past, defined as work performed in the last fifteen
4  years prior to the disability onset date.  If the ALJ finds that
5  the claimant is not able to do the type of work that he or she has
6  done in the past or does not have any past relevant work, the ALJ
7  proceeds to step five to determine whether - taking into account
8  the claimant's age, education, work experience and RFC - there is
9  any other work that the claimant can do and if so, whether there
10 are a significant number of such jobs in the national economy.
11 Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §
12 404.1520(a)(4)(iii)-(v).  The claimant has the burden of proof at
13 steps one through four, and the Commissioner has the burden of
   proof at step five.  Tackett, 180 F.3d at 1098.
14

15 **B.    The ALJ Properly Discounted the Opinions of Plaintiff's**
16        **Treating Physician**
17

18      **1.    Legal Standard**
19

20      In evaluating medical opinions, the case law and regulations
21 distinguish among the opinions of three types of physicians:   (1)
22 those who treat the claimant (treating physicians); (2) those who
23 examine but do not treat the claimant (examining physicians); and
24 (3) those who neither examine nor treat the claimant (nonexamining
25 or reviewing physicians).  See 20 C.F.R. §§ 404.1502, 404.1527,
26 416.902, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th
27 Cir. 1995).  Generally, the opinions of treating physicians are
28 given greater weight than those of other physicians, because

7

1  treating physicians are employed to cure and therefore have a
2  greater opportunity to know and observe the claimant.    Orn v.
3  Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen, 80 F.3d at 1285.

4

5       The ALJ may only reject a treating or examining physician's
6  uncontradicted medical opinion based on "clear and convincing
7  reasons." Lester, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53
8  F.3d 1035, 1043 (9th Cir. 1995)).    Where such an opinion is
9  contradicted, however, it may only be rejected for "specific and
10 legitimate reasons that are supported by substantial evidence in
11 the record."[2]  Id. (citing Andrews, 53 F.3d at 1043). The opinion
12 of a nonexamining physician cannot by itself constitute substantial
13 evidence justifying the rejection of an examining physician's
   opinion.
14

15

16

17

18       [2]  Here, on April 7, 2010, the consultative examiner, Bunsri
19 T. Sophon, MD, concluded that Plaintiff "does not have significant
   physical impairment and there are no functional limitations."
20 (A.R. 369).  Thus, Dr. Lee's opinion is controverted by Dr. Sophon.
   The ALJ, however, gave Dr. Sophon's opinion "[l]ittle weight"
21 because there was no indication that she had reviewed Plaintiff's
   records, "did not cite to her examination in support of her
22 conclusions, and evidence received subsequent to the rendering of
   this opinion, along with the presentation of the claimant at the
23 hearing, justifies the findings made and the limitations
   accordingly imposed." (Id. 15).  Plaintiff appears to concede that
24 Dr. Lee's opinions were controverted and that the ALJ's reasons
   need only be specific and legitimate. (See, e.g., Joint Stip. 9
25 ("the ALJ erred . . . by not setting forth specific and legitimate
   reasons supported by substantial evidence" for discounting Dr.
26 Lee's opinions)).  Even assuming that Dr. Lee's opinions were
   uncontroverted, the Court finds that the ALJ's reasoning satisfies
27 even the stricter "clear and convincing" standard and, therefore,
28 was legally sufficient under either standard.

8

## 2.   **Analysis**

On April 13, 2011, plaintiff's treating physician, Jonathan Lee, MD, completed a "Primary Treating Physician's Progress Report," for Plaintiff's Worker's Compensation Claim. (A.R. 492-95). In that report, Dr. Lee opined that Plaintiff was temporarily restricted to "modified duty," limiting him to sedentary work. (Id. 494). One month later, on May 11, 2013, Dr. Lee opined in another progress report that Plaintiff was "permanent and stationary with restrictions of no prolonged standing, walking, sitting, stooping and bending and no repetitive lifting." (Id. 490).

With respect to Dr. Lee's opinions, the ALJ stated the following:

> Dr. Lee treated the claimant over a lengthy period, was reporting within the bounds of his professional certifications, and had access to the claimant's medical records; however, he did not cite to the records in support of his conclusions, there is no indication that he bears even a passing familiarity with the disability process, his opinion altered in the space of [a] single month with no changes in his objective findings to explain such a shift, his opinion reported degrees of functional limitation that finds no foundation in his objective findings and his opinion was offered to a different government program, with different objectives.

9

1    Accordingly, little weight was accorded either of his
2    opinions.

3

4    (<u>Id.</u> 15-16).

5

6    Plaintiff argues that the ALJ improperly rejected the April
7    13, 2011, and May 11, 2011, opinions of Dr. Lee. (Joint Stip. 3-
8    9). He contends that the ALJ failed to state whether she accepted
9    or rejected Dr. Lee's opinions, and did not provide specific and
10   legitimate reasons supported by substantial evidence for rejecting
11   his opinions. (<u>Id.</u> 4; <u>see also</u> <u>supra</u> note 2). Specifically, he
12   argues that the ALJ failed to articulate with any degree of
13   specificity any evidence to support her conclusory findings
14   regarding Dr. Lee's opinions; failed to credit Dr. Lee's
15   longitudinal relationship with Plaintiff; improperly relied on a
16   finding that Dr. Lee is not familiar with the disability process;
     and erred in concluding that Dr. Lee's opinions had no foundation
17   in his objective findings. (<u>Id.</u> 6-7). The Court disagrees.

18

19   **a.   Lack of Objective Findings**

20

21   The ALJ found that Dr. Lee's opinions were unsupported by Dr.
22   Lee's objective findings. (<u>Id.</u> 15-16). Specifically, the ALJ also
23   discounted Dr. Lee's opinions because his opinion changed in the
24   space of a month, without explanation or support from objective
25   findings, from "[m]odified duty, sedentary work only," to
26   "permanent and stationary with restrictions of no prolonged
27   standing, walking, sitting, stooping and bending and no repetitive
28   lifting," which would preclude even sedentary work. (<u>Compare</u> A.R.

10

1    494 <u>with</u> <u>id.</u> 409).

2

3        An ALJ "need not accept the opinion of any physician,
4    including a treating physician, if that opinion is brief,
5    conclusory and inadequately supported by clinical findings."
6    <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); 20 C.F.R. §
7    404.1527(d)(2) ("If we find that a treating source's opinion . . .
8    is well-supported . . . and not inconsistent with the other
9    substantial evidence in your case record, we will give it
10   controlling weight").  Additionally, an ALJ may properly discount
11   a treating physician's limitations as "not supported by any
12   findings" where there is "no indication in the record what the
13   basis for these restrictions might be."  <u>Rollins v. Massanari</u>, 261
14   F.3d 853, 856 (9th Cir. 2001); <u>see also</u> 20 C.F.R. § 404.1527(c)(2);
15   <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 692-93 (9th
16   Cir. 2009) (contradiction between a treating physician's opinion
17   and his treatment notes constitutes a valid reason for rejecting
18   the treating physician's opinion); <u>Bayliss v. Barnhart</u>, 427 F.3d
19   1211, 1216 (9th Cir. 2005) (contradiction between treating
20   physician's assessment and clinical notes justifies rejection of
21   assessment); <u>see also</u> <u>Johnson v. Shalala</u>, 60 F.3d 1428, 1432 (9th
     Cir. 1995).

22

23       A review of Dr. Lee's April and May 2011 reports shows that
24   despite Dr. Lee's change in opinion in May 2011, he stated in that
25   later report that Plaintiff's "[c]urrent complaints are unchanged
26   from his previous visit," and that since Plaintiff's last visit
27   "there have not been any new injuries."  (<u>Id.</u> 488.)  Moreover, the
28   Court notes that Dr. Lee had also assessed "Modified duty,

                                  11

sedentary work only,"[3] in all of his prior reports, dated October 20, 2010, November 17, 2010, December 15, 2010, January 19, 2011, February 16, 2011, and March 16, 2011.  (Id. 501-29).

Dr. Lee provided no explanation for his sudden change in opinion after nine months of treating Plaintiff and finding him capable of modified sedentary work throughout that time.  This inconsistency is a basis for rejecting Dr. Lee's opinion.  See Thomas, 278 F.3d at 957; Johnson, 60 F.3d at 1432; Rollins, 261 F.3d at 856 (ALJ properly discounted treating doctor's opinions for being "so extreme as to be implausible," and "not supported by any findings," where there was "no indication in the record what the basis for these restrictions might be").

Dr. Lee's objective findings also fail to support his May 11, 2011, and subsequent opinions.  In the examination on May 11, 2011, Dr. Lee observed that Plaintiff was a "well-developed, well-nourished male who ambulates into the examination room with a normal heel to toe gait, independently, without assistive device." (A.R. 489).  He also noted the following:  areas of tenderness on palpation of plaintiff's lumbar area; Plaintiff's lumbar range of motion was 70% of normal in flexion and extension; straight leg raising was negative; motor functioning was 5/5 bilaterally; Plaintiff's reflexes were normal; and there was no atrophy, gross

---

[3]   An August 24, 2010 "Initial Orthopedic/Neurologic Consultation and Request for Authorization of Medical Treatment for Utilization Review Purposes" completed by Gail Hopkins, II, MD, also noted that Plaintiff should continue "on the same modified duties at sedentary work . . . ."  (A.R. 529).

deformity, or edema in Plaintiff's upper and lower extremities. (<u>Id.</u>). These objective clinical findings were identical to Dr. Lee's April 2011 findings; indeed, they were identical to all of Dr. Lee's previous findings in his reports dated October 20, 2010, November 17, 2010, December 15, 2010, January 19, 2011, February 16, 2011, and March 16, 2011, and in the August 24, 2010, initial consultation report completed by Dr. Hopkins, who also took x-rays in her office on that date.[4] (<u>Id.</u> 501-23, 524-29).

Similarly, even after his May 2011 opinion that Plaintiff was precluded from "prolonged standing, walking, sitting, stooping, and bending and no repetitive lifting," Dr. Lee's subsequent August 24, 2011, and November 16, 2011, reports merely parroted that finding despite also noting that Plaintiff's "[c]urrent complaints are unchanged from his previous visit," and that "there have not been any new injuries," since his prior visit. (<u>Id.</u> 480, 484). In these later reports Dr. Lee also assessed the same objective clinical findings as found prior to May 2011: areas of tenderness on palpation of plaintiff's lumbar area; Plaintiff's lumbar range of motion was 70% of normal in flexion and extension; straight leg raising was negative; motor functioning was 5/5 bilaterally; Plaintiff's reflexes were normal; and there was no atrophy, gross

---

[4]    <u>See also</u> <u>supra</u> note 3.  Dr. Hopkins noted that the x-rays of Plaintiff's lumbar spine showed "degenerative disc disease at L5-S1 of moderate degree," and x-rays of the thoracic spine showed "evidence of very mild degenerative changes consistent with age." (A.R. 529).    Dr. Hopkins also stated that Plaintiff was not a surgical candidate, and noted that although epidural steroid injections had been recommended to Plaintiff after his 2002 MRI, they were never performed because Plaintiff stated "that he opted not to undergo the injections." (<u>Id.</u> 522, 525, 529).

deformity, or edema in Plaintiff's upper and lower extremities. (Id.).

On February 8, 2012, Dr. Lee did note that Plaintiff's "[c]urrent complaints have worsened from his previous visit, and that Plaintiff reported "an increase[] of pa[i]n in his arms, and legs along with weakness." (Id. 471). In this report, Dr. Lee also noted that Plaintiff "is doing OK with meds" but that even with medications, Plaintiff "needs cane for ambulation." (Id. 473). However, the Court's review of the record did not find any indication that Dr. Lee had *ever* prescribed Plaintiff a cane for ambulation. Indeed, all of Dr. Lee's reports, *including the February 8, 2012,* report, state that Plaintiff had walked into the examination room with a "normal heel to toe gait, independently, without assistive device." (See, e.g., id. 472, 481, 485, 502, 505, 510, 514). Also telling, Dr. Lee's objective clinical findings on February 8, 2012, were again unchanged from *any* of Dr. Lee's previous reports.

Finally, the only diagnostic studies referred to by Dr. Lee in his records were a "repeat MRI of the lumbar spine" performed on July 11, 2008, "which revealed mild degenerative disc disease and facet osteoarthritis at L4-5 and L5-S1 with no evidence of abnormal contrast enhancement or spinal stenosis"[5] (id. 521), and a March 24, 2011, MRI of the thoracic spine, which showed a "[n]ormal thoracic spine" (id. 490, 494, 496). Dr. Lee did not take any of

---

[5]   These findings were consistent with Plaintiff's prior MRI on October 3, 2002. (See, e.g., A.R. 525).

14

1  his own x-rays, nor did he mention or appear to rely in any way on
2  Dr. Hopkins' x-rays.  (Id.; see also supra note 3).   Dr. Lee
3  treated Plaintiff conservatively with medication (id. 490, 499,
4  503, 507, 511, 515, 522), and it was not until his May 11, 2011,
5  report that he recommended Plaintiff receive "ten sessions of
6  physical therapy for the next five years." (id. 490).

7
8          b.  **Worker's Compensation Context**
9
10         The ALJ also noted that Dr. Lee's opinion, prepared in the
11  worker's compensation context, contains no indication that "he
12  bears even a passing familiarity with the disability process."
13  (A.R. 16).   Although Plaintiff contends this is irrelevant, the
14  regulations provide that "the amount of understanding of our
15  disability programs and their evidentiary requirements that an
16  acceptable medical source has . . . are relevant factors that we
17  will consider in deciding the weight to give to a medical opinion."
18  20 C.F.R. § 404.1527(c)(6).

19      **3.  Conclusion**
20
21         Based on the foregoing, the ALJ provided clear and convincing
22  reasons for discounting the opinions of Dr. Lee.  Therefore, there
23  was no error.
24
25  **C.  The ALJ Did Not Arbitrarily Discredit Plaintiff's Testimony**
26
27         Plaintiff  contends  that  the  ALJ  erred  in  discounting
28
                                15

Plaintiff's credibility.   (Joint Stip. at 12-15).

## 1.   **Legal Standard**

Where, as here, the ALJ finds that a claimant suffers from a medically determinable impairment that could reasonably be expected to produce his or her alleged symptoms, the ALJ must evaluate "the intensity, persistence, and functionally limiting effects of the individual's symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities.   This requires the [ALJ] to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effect."   Soc. Sec. Ruling 96-7p.

An ALJ's assessment of a claimant's credibility is entitled to "great weight."   Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). The ALJ may not discount the claimant's testimony regarding the severity of the symptoms without making "specific, cogent" findings.   Lester, 81 F.3d at 834; see also Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010) (reaffirming same); but see Smolen, 80 F.3d at 1283-84 (indicating that ALJ must provide "specific, clear and convincing reasons to reject a claimant's testimony where there is no evidence of malingering); see Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).[6]   Generalized, conclusory findings

[6]   In the absence of evidence of "malingering," most recent Ninth Circuit cases have applied the "clear and convincing" standard.   See, e.g., Chaudhry v. Astrue, 688 F.3d 661, 670, 672
(continued...)

do not suffice.  See Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) (the ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony") (citation and internal quotation marks omitted); Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (the ALJ must "specifically identify the testimony [the ALJ] finds not to be credible and must explain what evidence undermines the testimony"); Smolen, 80 F.3d at 1284 ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion."); see also Soc. Sec. Ruling 96-7p.

An ALJ may consider a range of factors in assessing credibility, including "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284.

---

[6](...continued)
n.10 (9th Cir. 2012);  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012); Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1234 (9th Cir. 2011); Valentine, 574 F.3d at 693; Ballard v. Apfel, 2000 WL 1899797, at *2 n.1 (C.D. Cal. Dec. 19, 2000) (collecting cases).  As set forth infra, the ALJ's findings in this case are sufficient under either the "clear and convincing" standard, or the requirement that the ALJ make "specific findings" supported by the record in making the credibility evaluation, so the distinction between the two standards (if any) is academic.

1

2

## 2.   **The ALJ's Credibility Finding**

3     The ALJ stated that Plaintiff "alleges chronic, severe back
4 pain with muscle spasms and numbness in his legs." (A.R. 13).  She
5 stated the following with respect to Plaintiff's credibility:

6

7          After careful consideration of the evidence, the
8     undersigned   finds   that   the   claimant's   medically
9     determinable impairments could reasonably be expected to
10     cause  the  alleged  symptoms;  however,  the  claimant's
11     statements  concerning  the  intensity,  persistence  and
12     limiting effects of these symptoms are not credible to
13     the extent they are inconsistent with the above  residual
14     functional capacity assessment.

15
(Id.)
16

17
     The  Court's  review  of  the  ALJ's  decision  shows  that  she
18 discounted  Plaintiff's  testimony  for  the  following  specific
19 reasons:  (1) diagnostic testing, and the record when viewed as a
20 whole,  is  not  supportive  of  Plaintiff's  contention  that  his
21 impairment is "preclusive of all types of work"; (2) Plaintiff's
22 prescription medications are effective, and without side effects;
23 (3) Plaintiff's  treatment  has  been  conservative  and  routine  in
24 nature; (4) Plaintiff declined to follow up on therapies somewhat
25 more invasive than physical therapy, including epidural steroid
26 injections,  and  a  discogram;  (5)  Plaintiff  described  daily
27 activities  which  are  not  limited  to  the  extent  that  would  be

28
                                 18

expected given his complaints of disabling symptoms and limitations; and (6) Plaintiff made inconsistent statements regarding his medication side effects. (Id. 14-15).

### a.  **Objective Medical Evidence**

Although a claimant's credibility "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor . . ." Rollins, 261 F.3d at 857. Lack of supporting objective medical evidence is a key consideration for the ALJ in evaluating credibility. See 20 C.F.R. §§ 404.1529(c)(4); 416.929(c)(4) (in determining disability, an ALJ must evaluate a claimant's statements about the intensity, persistence and limiting effects of his symptoms "in relation to the objective medical evidence and other evidence").

Here, the ALJ reviewed the July 11, 2008, diagnostic imaging of Plaintiff's lumbar spine, which reported only mild degenerative disc disease and osteoarthritic changes "from the L4 through L1 vertebral bodies." (A.R. 14 (citing id. 525)). The ALJ also noted that the imaging showed no evidence of canal or foraminal stenosis, or nerve root involvement. (Id.).

Furthermore, Plaintiff's physical examinations "consistently, albeit not universally, reported either minimal or normal findings." (Id.). For instance, various examination reports reflected normal posture when sitting and standing, rising without

19

1    difficulty from a sitting position or the examining table, a normal
2    gait, no tenderness of the lumbar spine (although one report noted
3    "areas of tenderness to palpation"), mildly reduced or full range
4    of lumbar motion, negative straight leg raising, normal muscle
5    strength, normal reflexes, normal sensation, and lack of an
6    assistive device for ambulation. (Id. (citing id. 367-69, 472-73,
7    502)). These are valid reasons for discounting Plaintiff's
8    subjective complaints. Morgan v. Comm'r of Soc. Sec., 169 F.3d
9    595, 600 (9th Cir. 1999) (conflict between subjective complaints
10   and the objective medical evidence in the record is a sufficient
11   reason that undermines a claimant's credibility; Osenbrock v.
12   Apfel, 240 F.3d 1157-1165-66 (9th Cir. 2001) (affirming ALJ's
13   decision that relied in part on finding that neurological and
14   orthopedic evaluations revealed "very little evidence" of any
15   significant disabling abnormality of the claimant's upper or lower
    extremities, or spine).
16

17
     Accordingly, substantial evidence supports the ALJ's
18   credibility analysis with respect to the objective medical evidence
19   and this was a clear and convincing reason for discounting
20   Plaintiff's credibility.
21

22     More importantly, as discussed below, this was not the sole
23   legally sufficient reason for discounting Plaintiff's credibility.
24

25             **b.   Effective Medication Without Side Effects**
26

27     The ALJ also discredited Plaintiff's testimony because the
28

treatment notes reflected that Plaintiff follows "a regimen of prescription medications," which, according to Dr. Lee are effective, and without side effects.  (A.R. 14).

The ALJ also reported that Plaintiff made inconsistent statements regarding the side effects of his medications, noting that in his disability report he reported side effects, but then reported to his treating source that there are no side effects from the same medications.  (Id. 15 (citing id. 247 (claiming his medications may cause ringing in his ears), 429 (Plaintiff reported no side effects from the medication he "has been on regularly")).

The record supports these findings.  Plaintiff's health records do not indicate any complaints of side effects, and there is no indication that any medications were discontinued or modified as a result of such complaints.  Indeed, Dr. Lee routinely continued prescribing Plaintiff the same medications. (Id. 247, 427-29, 480, 482, 484, 486, 488, 490, 492, 494, 497, 499, 501, 503, 505, 507, 509, 511, 513, 515)).  On March 16, 2011, Dr. Lee noted that he was renewing Plaintiff's medication "as it allows [Plaintiff] to function."  (Id. 499; see also id. 482 (Plaintiff told Dr. Lee he needs medication for his pain "which allows him to function")).   Dr. Lee also repeatedly noted that Plaintiff's symptoms are "alleviated with massage, heat and medications," and/or therapy (Id. 488, 492, 497, 501, 505, 509, 513).   At the hearing, although Plaintiff noted that he sometimes feels dizzy, or needs to take a nap during the day, he was not sure if it was because of his medications or for other reasons.  (Id. 41-42, 44).

He did not mention ringing in his ears.

In assessing a claimant's credibility about his symptoms, an ALJ may consider "the type, dosage, effectiveness, and side effects of any medication." 20 C.F.R. § 404.1529(c). An ALJ may also rely on "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling symptoms. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991). In this case, Plaintiff's statements in his disability report regarding possible medication side effects were inconsistent with the medical record and his testimony at the hearing.

Accordingly, these were valid reasons supported by substantial evidence of record for discounting Plaintiff's credibility.

### c. Conservative and Routine Treatment

The ALJ's credibility assessment also relies on the fact that Plaintiff's treatment for his "'allegedly disabling impairment" has been "essentially routine and/or conservative in nature." (A.R. 14). She noted that Plaintiff had received physical therapy, and was "discharged" from that practice on June 10, 2010, "having met all of his goals." (Id. (citing id. 405)).

A review of the record supports the ALJ's conclusion. For instance, Plaintiff's Worker's Compensation reports indicated that he had been treated conservatively for "the past four years," with medications and physical therapy. (Id. 518, 525). On July 27,

22

2010, Plaintiff was "instructed to finish his [physical] therapy and medications as well as his home exercise program."  (Id.).

The ALJ was entitled to discount Plaintiff's credibility based on his positive response to conservative treatment. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain"); Johnson, 60 F.3d at 1432 (ALJ may properly rely on the fact that only conservative treatment has been prescribed).

The ALJ also relied on the fact that Plaintiff had refused "somewhat more invasive" therapies than physical therapy, including epidural steroid injections, and a discogram. (A.R. 14 (citing id. 522, 525)).  An ALJ may consider many factors in weighing a claimant's credibility, including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.  Tommasetti, 533 F.3d at 1039.

Accordingly, these were clear and convincing reasons to discount Plaintiff's credibility.

### d.  **Activities of Daily Living**

The ALJ also discounted Plaintiff's credibility to the extent his complaints were inconsistent with his reported activities, including the ability to attend to his own hygiene and grooming, drive a car, attend to light yard work, attend to light mechanical

1  maintenance, prepare his own meals, shop in stores, and watch
2  television for pleasure. (A.R. 15 (citing id. 248)). The ALJ
3  concluded:

5      In short, the claimant has described daily activities,
6      which are not limited to the extent one would expect,
7      given the complaints of disabling symptoms and
8      limitations. It is noted that the scope of these
9      activities is not consistent with the degree of
10     functional limitation alleged by the claimant, and
11     although none of these activities, considered alone,
12     would warrant or direct a finding of not disabled, when
13     considered in combination, they strongly suggest that the
14     claimant would be capable of engaging in the work
15     activity contemplated by the residual functional
       capacity.

17     (Id.). The ALJ also noted that although Plaintiff alleges he
18  performs "few house chores," he lives alone and does not report
19  that he gets any sort of help in maintaining his residence. (Id.).
20  Daily activities that are inconsistent with alleged symptoms are a
21  relevant credibility determination. Rollins, 261 F.3d at 857.

23     Accordingly, the Court finds that this was a legally
24  sufficient reason for the ALJ's adverse credibility finding.

28                                24

1

**3. Conclusion**

2

3    The legally valid reasons given by the ALJ for discounting
4 Plaintiff's credibility sufficiently allow the Court to conclude
5 that the ALJ credibility finding was based on permissible grounds.
6 The Court therefore defers to the ALJ's credibility determination.
7 See Lasich v. Astrue, 252 Fed. App'x 823, 825 (9th Cir. 2007)
8 (court will defer to ALJ's credibility determination when the
9 proper process is used and proper reasons for the decision are
10 provided); accord Flaten v. Sec'y of Health and Human Serv., 44
11 F.3d 1453, 1464 (9th Cir. 1995). Where the ALJ has made specific
  findings justifying a decision to disbelieve Plaintiff's symptom
12 allegations and those findings are supported by substantial
13 evidence in the record, "we may not engage in second guessing."
14 Thomas, 278 F.3d at 958-59.

15

16                          **ORDER**

17

18    For all of the foregoing reasons, the decision of the
19 Administrative Law Judge is affirmed.

20

21    LET JUDGMENT BE ENTERED ACCORDINGLY.

22
  DATED:   December 4, 2014.
23

24                          /s/
                          ALKA SAGAR
25                        UNITED STATES MAGISTRATE JUDGE

26

27

28

                          25